[No. 14082. Department One. August 17, 1917.]

*In the Matter of the Guardianship of* HENNING MARTIN ANDERSON *et al.*[1]

CONTEMPT—EVIDENCE—SUFFICIENCY. Where, upon a hearing for settlement, a guardian admitted that he had the money due his ward in a safe-deposit box, he is guilty of contempt in refusing to pay it over on the judgment entered requiring him to do so; and it is no excuse that the guardian's brother had raised the money and subsequently refused to allow it to be drawn upon, where no intimation of such fact was made at the hearing.

SAME—POWERS OF COURT—IMPRISONMENT. Where a guardian was in contempt for failing to pay over money to his ward, as required by a judgment, the court has jurisdiction to adjudge the contempt and commit him to the county jail until the order is complied with.

SAME—PROCEEDINGS—PARTIES. A contempt proceeding against a guardian for failure to comply with an order to pay money need not be prosecuted in the name of the state.

Appeal from an order of the superior court for King county, Smith, J., entered September 20, 1916, adjudging

[1]Reported in 167 Pac. 70.

a guardian to be in contempt of court, after a hearing upon a show cause order. Affirmed.

*Walter B. Allen,* for appellant.

*Saunders & Nelson,* for respondents.

MAIN, J.—This is an appeal from an order of the superior court adjudging John Kalberg to be in contempt thereof for his failure to pay over to Albin Elmer Anderson, for whom Kalberg had been guardian, the sum of $1,250.

The facts are these: On September 27, 1909, Kalberg was appointed guardian for Henning Martin Anderson and Albin Elmer Anderson, and there came into his possession, as such guardian, the sum of $2,289.50, belonging to the minors in equal proportions. This appeal is only concerned with the estate of Albin Elmer Anderson, who, on the 6th day of July, 1916, became of age. Soon after this time, the guardian caused a report of his doings as such to be prepared and filed. Subsequently, objections to this report were presented, and the cause came on for hearing on the 7th day of August, 1916. This trial resulted in a judgment to the effect that the guardian owed his ward the sum of $1,390.85. During the hearing upon the final account, which resulted in the judgment indicated, the following occurred while Kalberg was upon the witness stand:

"Q. And you are ready and able to make settlement now with the younger man (Albin Elmer Anderson)? A. Yes, sir. Q. Now, on July 6, 1916, when Albin Anderson became of age, you had no money whatever in the First State Bank, did you? A. No, sir. Q. Nor in any other bank? A. Now I don't know what to say about that. I might have had money in other banks, but I don't know why that should be gone into, what I had in other banks. Now as far as having the money, if that is what you are driving at, I didn't have it. Q. You didn't have it on July 6, 1916? A. No, I didn't, but I raised it afterwards. I didn't— Q. By the way, it is now said that you have $1,196.61 without any interest on it. Have you got that now? A. I have got more than that. Q.

Where is it? Mr. Allen: I have it in a safe-deposit in cold cash. Mr. Saunders: I would like to have it here. The Court: If he says that he has it I presume that will be sufficient. If the order of the court is made on this and he does pay it— Mr. Allen: Before I had him file that report I had the money put up in cash and I have it now in the safe-deposit box, and it was there when this account was first brought up for hearing before Judge Dykeman. I had it at that time in my pocket in the court house and it is now in the safe-deposit box. The Court: Very well. Q. Where did you get that money that you turned over to your lawyer? Mr. Allen: I object to that. I don't think it is material. The Court: I don't think the source of it is material. If he actually has the money coming to the younger boy he is prepared. I don't think it is material as to the source from which he gets it as long as it is on hand for that purpose . . . Q. When the young man became of age on the 6th of this month, did you go into your attorney's office and tell him to prepare the account and get it ready, or within just about that time? A. Yes, after he had seen me, of course. . . . Q. And before you filed this account that we have got in here now you went out and got the money did you not, $1,250? A. Yes, sir."

After the judgment entered on August 24, 1916, in which it was found that the guardian was indebted to the ward in the sum of $1,390.85, neither the $1,250, which the guardian testified upon the hearing that he had, and which his counsel assured the court was in a safe-deposit box, nor any other sum, was paid to the ward. On the 24th day of August, 1916, the ward applied to the court for an order, directed to the guardian, requiring him to show cause why he should not pay over to the ward the $1,250 mentioned. This application was supported by an affidavit. On the same day, an order to show cause was issued, returnable on the 29th day of August, 1916. The hearing upon the show cause order was held on the 5th day of September, 1916, and Kalberg was directed to forthwith "pay over to said Albin Elmer Anderson the said sum of $1,250 on or before the 15th day of September, 1916, and the said matter of contempt to be

continued to said last mentioned date; . . ." The money was not so paid over, and on September 20, 1916, an order was entered committing Kalberg to the county jail until such time as he should turn over to the ward the $1,250. It is from this order that the appeal is prosecuted.

It is first contended that, under the findings in the judgment entered upon the final account, the guardian is not subject to be committed for contempt, but this contention is not well founded. Upon the hearing which resulted in that judgment, the guardian testified that he had $1,250 which he could pay over, and his counsel assured the court that it was in the safe-deposit box. That the guardian may have previously commingled the ward's funds with his own and had subsequently become insolvent, if such be the fact, would not excuse the failure to turn over the $1,250 which it was claimed upon the hearing that he then had.

It is next claimed that the guardian cannot be adjudged guilty of contempt if it were beyond his power to make the payment at the time ordered so to do. The excuse offered for failure to comply with the order was that the $1,250 had been raised by the guardian's brother, but that, subsequent to the hearing upon the final account, the brother had withdrawn the money and refused to allow it to be paid over. The fact that the brother had any claim to the money, or had anything to do with the raising of the amount thereof, was not called to the attention of the court upon the hearing. On the contrary, the court was given to understand that the money was readily available and would be immediately paid over when the judgment was entered. Had not this been the understanding of the trial judge, he undoubtedly would have directed the money to be brought into court when the ward's counsel suggested that this be done. The excuse offered for failure to turn over the money was not sufficient.

It is next claimed that the failure of the guardian to pay over the money was not brought to the attention of the court by affidavit. The record shows that the ward filed an

affidavit in support of his application for a show cause order, and upon the hearing on the return thereto, the guardian was directed to forthwith pay over the money before a certain date, and the cause was continued to that date. Under these facts, there can be no merit in the claim that the facts shown to the court constituting the contempt were not made to appear by affidavit.

There seems to be some claim that the court was without power to enter the order adjudging the guardian to be in contempt and committing him to the county jail until the order should be complied with. This question is fully discussed in *State ex rel. Sargent v. Superior Court*, 71 Wash. 495, 128 Pac. 1077, and under the holding in that case the trial court had the power to make the order.

The final contention is that the contempt proceeding is defective because it is not brought in the name of the state, but this contention is without merit, as will be seen by an examination of the cases of *Poland v. Poland*, 63 Wash. 597, 116 Pac. 2, and *Wright v. Suydam*, 79 Wash. 550, 140 Pac. 578, in which cases the question is fully considered and determined adversely to the contention here made.

The judgment will be affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and WEBSTER, JJ., concur.