[No. 33478-0-II.   Division Two.   August 8, 2006.]

*In the Matter of the Marriage of* JUDY DIDIER, *Respondent,* and MICHAEL DIDIER, *Appellant.*

492

*Cheryl D. Aza* (of *Expat-CAPE*) and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Dennis B. Casey*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Michael Didier appeals an order holding him in contempt for failing to pay past due child support. Michael[1] maintains that (1) the commissioner erred in imputing his income to calculate the child

---

[1] We use the parties' first names for clarity.

support award, (2) the child support obligations violate his right to free exercise of religion, and (3) the contempt sanction violated his constitutional rights because it was punitive in nature. We uphold the child support award but reverse the trial court's punitive contempt order.

## FACTS

¶2 Michael and Judy Didier married in 1981 and had three children. Judy petitioned for legal separation in 2004 and sought child support. Michael opposed the court action in its entirety, asserting that the state lacked personal jurisdiction because he was a member in the "Embassy of Heaven Church" and served only Jesus Christ. Report of Proceedings (RP) (May 16, 2005) at 4-5. Michael also opposed child support payments because, as a church "missionary," he did not have an income and had taken a "vow of poverty" that precluded him from accepting paid employment. Clerk's Papers (CP) at 104; RP (May 16, 2005) at 5. According to Michael, the church provided for his needs.

¶3 Judy disputed Michael's assertion, maintaining that the church was a sham and that he charged people $3,000 to $4,000 to advise them on establishing themselves as a "church" or "trust" in order to avoid paying taxes. CP at 37.[2] According to Judy, before she filed for legal separation, Michael was bringing home a "couple thousand dollars a month." RP (Jan. 27, 2005) at 7.

¶4 Michael refused to submit financial declarations and wrote "[r]efused for Fraud [Federal Rules of Civil Procedure (F.R.C.P.)] 9(b) I am not a member of your body politic" across the statutory child support schedule worksheet. CP at 123.

---

[2] It is not clear whether Judy's allegation concerns "Remedies at Law," an affiliate of the Embassy of Heaven Church that a local federal district court judge recently found to be engaged in the promotion and marketing of a "fraudulent tax scheme using corporations sole and ministerial trusts in an attempt to fraudulently evade income and employment tax." *United States v. Stoll*, 2005 U.S. Dist. LEXIS 13892 *1, *3 2005-2 U.S. Tax Cas. (CCH) P50,460 (W.D. Wash.). Michael was not a party to the *Stoll* case, but the address for Remedies at Law set forth in the judge's opinion is the same address Michael provided to the court below. 2005 U.S. Dist. LEXIS 13892, at *2.

The commissioner found Michael to be healthy, intelligent, and capable of obtaining employment and concluded that, although Michael was "a man of strong religious beliefs," he "owe[d] an ultimate duty and obligation" to support his children. RP (Jan. 27, 2005) at 16. She then imputed income to Michael as a 50-year-old male and ordered him to pay $942.30 in monthly child support.

¶5 Michael did not pay any child support in the more than two months after the award. He was served with a show cause order but failed to appear at the hearing. A bench warrant issued for his arrest. After another month and a half without child support, Judy filed a motion for contempt. Michael appeared at the contempt hearing and the commissioner quashed the warrant but found Michael in contempt of court.

¶6 The commissioner found that Michael had the ability to comply with the child support order but remained voluntarily unemployed. The commissioner entered the following order of contempt:

> Michael Didier is hereby sentenced to thirty days in Pierce County Jail beginning June 17, 2005 unless he pays the judgment costs and attorney fees in full prior to June 17, 2005. If Mr. Didier makes substantial payments toward the amount above, the court may entertain a motion to modify this Order.

CP at 118. Michael appealed and the trial court stayed its contempt order pending this appeal.

¶7 We answer two questions: (1) Is the order requiring Michael to pay $942.30 per month in child support enforceable? (2) Is the order on contempt criminal (punitive) or civil (remedial)?

¶8 If the order on contempt is remedial, then the proceeding is civil and does not offend Michael's due process rights. However, if the order is punitive, then the proceeding is criminal and due process affords Michael the same rights as a criminal defendant, including the right to a jury trial. *See In re Pers. Restraint of King*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988) (citing *State v. Boatman*, 104 Wn.2d 44, 46-47, 700 P.2d 1152 (1985)).

## ANALYSIS

CALCULATION OF CHILD SUPPORT

■ ¶9 Under RCW 26.19.071(6), a court imputes income to a parent who is voluntarily unemployed or underemployed in order to prevent a parent from avoiding his or her child support obligation.

> The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation.

RCW 26.19.071(6).

¶10 Michael maintains that the commissioner erred in imputing his income because she did not find that he was unemployed or underemployed in an attempt to avoid paying child support as required under RCW 26.19.071. We disagree.

¶11 RCW 26.19.071 does not require a finding that an *unemployed* parent is purposely attempting to reduce the parent's child support obligation. The portion of the statute on which Michael relies limits the imputation of income to a parent who is gainfully employed on a full-time basis and provides:

> A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed and finds that the parent is purposely underemployed to reduce the parent's child support obligation.

RCW 26.19.071(6).

¶12 Michael relies entirely on *In re Marriage of Peterson*, 80 Wn. App. 148, 906 P.2d 1009 (1995), *review denied*, 129 Wn.2d 1014 (1996). In *Peterson*, the trial court imputed the father's income when the father *worked full time for a bail*

*bond company* as in-house legal counsel and a bail bond agent, but his income was less than half the median net income for a man of his age. Division One concluded that because the father was gainfully employed full-time, the lower court erroneously imputed his income without first finding that he was purposely underemployed to reduce his child support obligation. *Peterson*, 80 Wn. App. at 155.

¶13 *Peterson* is inapplicable. A court is required to find that a parent is purposely underemployed to reduce his or her child support obligation *only if* the parent is "gainfully employed on a full-time basis." RCW 26.19.071(6). Title 26 RCW does not define "gainful employment," but its common legal definition is "[w]ork that a person can pursue and perform for money." BLACK'S LAW DICTIONARY 566 (8th ed. 2004); *cf. State v. Christensen*, 153 Wn.2d 186, 195, 102 P.3d 789 (2004) (undefined statutory term given its dictionary definition). Here, Michael asserts that his full-time calling as a church missionary is not a profitable pursuit. He is thus not "gainfully employed" and the court was not obligated to find that Michael was acting in a deceitful manner.

¶14 We next address whether substantial evidence supports the commissioner's finding that Michael's unemployment is voluntary. *See In re Marriage of Mattson*, 95 Wn. App. 592, 599, 976 P.2d 157 (1999); *In re Marriage of Brockopp*, 78 Wn. App. 441, 446, 898 P.2d 849 (1995). Michael refused to provide any documentation of his financial situation and wrote "[r]efused for Fraud F.R.C.P. 9(b) I am not a member of your body politic" across the statutory child support schedule worksheet.[3] CP at 123. In her declaration, Judy stated that Michael received income from

---

[3] Chapter 26.19 RCW requires a court to use the child support schedule, guidelines, and state-approved worksheets. *In re Marriage of Sievers*, 78 Wn. App. 287, 305, 897 P.2d 388 (1995) (stating that RCW 26.19.035 "requires that worksheets be filed in every proceeding in which child support is determined. There are no exceptions.").

the church to support the family.[4] Moreover, the trial court found Michael's assertion that he lacked income incredible.

¶15 In *In re Marriage of Dodd*, 120 Wn. App. 638, 86 P.3d 801 (2004), the superior court imputed the father's income, finding that the father was not being honest in stating his income and there was evidence that he was funneling income through a partner. Division Three affirmed, concluding that "[i]t is consistent with the plain language of the statute and its underlying purpose to consider a parent who conceals income in order to escape his or her support obligation as voluntarily underemployed or voluntarily unemployed for purposes of imputing income under RCW 26.19.071(6)." *Dodd*, 120 Wn. App. at 645.

¶16 This case parallels *Dodd*. The court did not find credible Michael's statement that he had no income. *See Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003) (credibility determinations are for the trier of fact and are not subject to appellate review). Supporting this finding were Judy's statements that the church was a sham and that Michael made several thousand dollars that he contributed to the family household before the couple's separation. Michael never refuted Judy's statements about his income. Aside from his own statements, Michael offered no evidence on his financial status, his current living situation, or his role in the Embassy of Heaven Church and how it provided for his daily needs. The record supports the finding that Michael was not forthright regarding his income and, thus, the commissioner did not err when she complied with the statute and imputed to him the income of the median income of year-round full-time workers as derived from the United States Bureau of Census.

FREE EXERCISE OF RELIGION

¶17 Michael next contends that the child support award violates his right to the free exercise of religion because it

---

[4] Specifically, during proceedings in front of the commissioner, Judy's counsel explained that prior to the separation, Michael contributed "a couple thousand dollars a month toward the household expenses." RP (Jan. 27, 2005) at 7.

requires him to obtain gainful employment—in contradiction to the tenets of his church—in order to avoid potential civil and criminal sanctions. We disagree.

¶18 Religious free exercise under the First Amendment embraces two concepts: "the freedom to believe and the freedom to act. The first is absolute while the second, by the nature of our democracy, cannot be." *State v. Balzer*, 91 Wn. App. 44, 52, 954 P.2d 931 (citation omitted), *review denied*, 136 Wn.2d 1022 (1998). When followers of a particular sect live in this nation as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the laws that bind others in this nation. *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-79, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990); *United States v. Lee*, 455 U.S. 252, 261, 102 S. Ct. 1051, 71 L. Ed. 2d 127 (1982). If a law is neutral and of general applicability, the First Amendment is not offended even if the law has the incidental effect of burdening a particular religious belief or practice. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993); *Smith*, 494 U.S. at 878.

¶19 There is no dispute here, nor could there be, that Washington's child support laws are neutral and of general applicability. Those laws embody the state's compelling interest of seeing that parents provide for their children. *Childers v. Childers*, 89 Wn.2d 592, 604, 575 P.2d 201 (1978). Michael had three children with Judy, and he has a legal obligation to support them. The commissioner's order of child support directs Michael to continue supporting his children. There is no evidence that Michael's religious beliefs preclude his providing support for his children; indeed, he has done so in the past. He must now act and continue this support. Michael's beliefs remain intact and unaffected by the court's directive that he continue to support his children. But Michael claims that his church will not support his children unless they live with him. But this means only that the court's order may require that

Michael alter his actions and find an alternate means of meeting his support obligation.[5]

CONTEMPT ORDER

■ ¶20 If a parent fails to comply with a child support order, then a court may hold that parent in contempt. RCW 7.21.010, 26.18.050; *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 693-94, 959 P.2d 687 (1998), *review denied*, 137 Wn.2d 1017 (1999). Contempt can be either civil or criminal, with the latter requiring the constitutional safeguards extended to other criminal defendants. *In re Interest of M.B.*, 101 Wn. App. 425, 438-40, 3 P.3d 780 (2000). The current Washington statutes on contempt define contemptuous conduct but, unlike previous statutes, they do not distinguish between civil and criminal contempt. *State v. Hobble*, 126 Wn.2d 283, 292, 892 P.2d 85 (1995). Instead, current statutes distinguish between punitive and remedial sanctions for contempt. RCW 7.21.010, .030, .040. A "punitive sanction" is "a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). A "remedial sanction" is "a sanction imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). Criminal contempt imposes a punitive sanction and civil contempt imposes a remedial sanction. *M.B.*, 101 Wn. App. at 438.

¶21 A sanction is remedial and "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). RCW 7.21-.010(1) defines the acts constituting contempt: " 'Contempt of court' means intentional: . . . (b) [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.030-.050 provide general guidelines for civil

---

[5] This conclusion makes it unnecessary to address Michael's assertion that because of his allegiance to the Embassy of Heaven Church, the commissioner erred in finding that he had the ability to, and intentionally chose not to, comply with the child support award.

(remedial), criminal (punitive), and summary contempt of court, respectively.

¶22 There is a well-recognized distinction between criminal and civil contempt proceedings and any judgment rendered thereon. While criminal contempt looks to punishment, civil contempt looks to remedy by coercing an action and compel compliance with an order or judgment requiring performance of some act by the contemnor. *In re Application for Writ of Habeas Corpus of Parent*, 112 Wash. 620, 626, 192 P. 947 (1920).

¶23 A court has civil contempt power in order to coerce a party to comply with its lawful order or judgment. *See* RCW 7.21.020; *M.B.*, 101 Wn. App. at 437-38. A civil contempt sanction will stand as long as it serves coercive, not punitive, purposes. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *King*, 110 Wn.2d at 799-800.

¶24 Criminal contempt is punitive. RCW 7.21-.010(2). With few exceptions (e.g., civil commitment, compelling testimony), confinement is punitive. *See, e.g., King*, 110 Wn.2d at 799. A prosecutor must file a complaint or an information before a court may impose a punitive sanction on a contemnor. RCW 7.21.040(2)(a). In criminal contempt cases, due process affords the contemnor those " 'rights extended to other criminal defendants.' " *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 105, 52 P.3d 485 (2002) (quoting *King*, 110 Wn.2d at 800).

¶25 " 'An order of remedial civil contempt must contain a purge clause under which a contemnor has the ability to avoid a finding of contempt and/or incarceration for noncompliance.' " *In re Interest of Rebecca K.*, 101 Wn. App. 309, 314, 2 P.3d 501 (2000) (quoting *State ex rel. Shafer v. Bloomer*, 94 Wn. App. 246, 253, 973 P.2d 1062 (1999)).

> A contempt sanction involving imprisonment remains coercive, and therefore civil, if the contemnor is able to purge the contempt and obtain his release by committing an affirmative act. In other words, the contemnor "carries the keys of his prison in his own pocket" and can let himself out simply by

obeying the court order. As long as there is an opportunity to purge, the fact that the sentence is determinate does not render the contempt punitive.

*M.B.*, 101 Wn. App. at 439 (footnotes omitted) (citations omitted) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S. Ct. 492, 55 L. Ed. 797 (1911)); *see also Shillitani v. United States*, 384 U.S. 364, 370 n.6, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) (stating in upholding as civil a two-year sentence with a purge clause, "The court may also impose a determinate sentence which includes a purge clause."). Whether incarceration is or remains a viable option for coercing the contemnor's compliance is, as a general rule, "a matter left to the sound discretion of the trial judge to be decided on a case-by-case basis." *King*, 110 Wn.2d at 802-03. A contemnor challenging the purge condition carries the burden of "offer[ing] evidence as to his inability to comply and the evidence must be of a kind the court finds credible." *King*, 110 Wn.2d at 804.

¶26 Undisputedly, Michael did not receive the procedural safeguards necessary for the imposition of a punitive sanction for his contempt of court. The issue here is whether the commissioner's sanction was remedial in that it purported to give Michael the opportunity to purge his contempt. We conclude that the contempt order was punitive, though not for the reasons Michael asserts.

■ ¶27 Michael asserts that the commissioner's sanction was punitive per se because a contemnor has no ability to collect income from a jail cell. According to Michael, the appropriate purge condition was to give him "an opportunity to devise and submit a plan to allow him to make an income so that he could comply with the child support order." Br. of Appellant at 23. But Washington courts have repeatedly approved the use of jail time as a remedy to obtain a parent's good faith compliance with child support obligations.[6] Jail can be a particularly useful coercive tool when the contemnor has repeatedly demonstrated his un-

---

[6] *See, e.g., Boatman*, 104 Wn.2d 44 (reversing child support contempt order where 10-day contempt sentence provided no opportunity to purge); *In re Guardianship*

willingness to comply after having been given the benefit of the doubt in the past. *See M.B.*, 101 Wn. App. at 448-50.

¶28 For four months, Michael did not abide by the commissioner's order to pay child support. Michael even failed to pay child support after the court served him with a show cause order, held a hearing (that he neglected to attend), and issued a warrant for his arrest. When Michael did appear at the contempt hearing, he continued to advance the position—disputed by his wife and found not credible by the commissioner—that he did not have an income. This evidence is sufficient to support a finding of contempt.

¶29 But in his order finding Michael in contempt, the commissioner stated that he was imposing a 30-day jail sentence:

> Michael Didier is hereby *sentenced* to thirty days in Pierce County Jail beginning June 17, 2005 unless he pays the judgment costs and attorney fees in full prior to June 17, 2005. If Mr. Didier makes substantial payments toward the amount above, the court may entertain a motion to modify this Order.

CP at 118 (emphasis added).

¶30 The use of the term "sentenced" suggests the court's punitive thinking here.[7] Nevertheless, we look to the specific provisions of the order to determine whether the order is punitive or coercive. Judy argues that the order is civil and coercive because it contains a provision that allows Michael to avoid incarceration if he pays his outstanding

*of Anderson*, 97 Wash. 683, 687, 167 P. 70 (1917) (guardian jailed until he paid child $1,250); *State ex rel. Daly v. Snyder*, 117 Wn. App. 602, 609-10, 72 P.3d 780 (2003), *review denied*, 151 Wn.2d 1005 (2004); *M.B.*, 101 Wn. App. at 448 ("In most contempt cases, compliance with the original order will indeed purge the contempt. Thus, in the context of child support, a delinquent parent can be detained for a determinate period or until he or she pays."); *State ex rel. Shafer v. Bloomer*, 94 Wn. App. 246, 253, 973 P.2d 1062 (1999); *Rhinevault*, 91 Wn. App. at 695; *In re Marriage of Wulfsberg*, 42 Wn. App. 627, 713 P.2d 132 (1986).

[7] In addition, during the contempt hearing, the commissioner made statements suggesting that she was concerned with deterrence: "[W]hen you don't support the children, even if you do follow these beliefs right into the jailhouse, if nothing else, the other folks in this courtroom will get the idea that people have to support kids." RP (May 16, 2005) at 11.

obligations, approximately $4,900, or makes a substantial payment thereto. She argues that if Michael is found in contempt and put in jail, he could gain his release simply by making a substantial payment toward his obligation. But the language of the court's order does not support Judy's argument.

¶31 The order contains an adequate purge provision for the period of time prior to June 17, 2005; if Michael pays $4,900 before June 17, 2005, he will have satisfied his obligation and avoided incarceration. But if he does not pay before June 17, 2005, the order requires that he serve 30 days incarceration (as failure to timely pay) and that, even if he pays while incarcerated, he is not entitled to immediate release, but he is merely permitted to file a motion to modify the order imposing the 30-day sentence, which the court may (or may not) grant.

¶32 At the hearing on Michael's motion to revise, the reviewing judge likewise interpreted the court's order as requiring a likely successful motion to modify before Michael could obtain his release.[8]

¶33 The punitive nature of the court's order here becomes clear when we compare it with the coercive jail time imposed in other cases. *See, e.g.*, *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590, 67 S. Ct. 918, 91 L. Ed. 1117 (1947) (individual may be held in prison while in contempt of order requiring production of documents); *Rhinevault*, 91 Wn. App. 688 (delinquent parent can be detained until he or she pays past due child support). The mere presence of purging-type language in a contempt order does not determine whether a penalty is punitive or coercive. The penalty is coercive if and only if the contemnor has *at all times* the capacity to purge the contempt and obtain his release. For example, such an order could read:

---

[8] The commissioner stated, "If within the 30 days, the next 30 days there's a change of attitude and a change of position, and Mr. Didier does start paying, or somebody does start paying on his behalf, I would suspect that the Court at that point might entertain modification of that jail time." RP (May 16, 2005) at 11.

Michael Didier must pay the judgment costs and attorney fees in full no later than the close of business, June 17, 2005. In the event that he fails to satisfy the judgment by that date, he must report to the Pierce County Jail on June 18, 2005, and must remain in the custody of the Pierce County Jail until July 18, 2005, or until the judgment is paid in full, whichever occurs first.

¶34 Under the court's order here, after June 17, 2005, Michael could not purge his contempt and be immediately released solely by paying the money owed. Thus, as to that portion of the court's contempt order after June 17, 2005, the 30-day jail term was a penalty. It was not wholly coercive, it was punitive and was, therefore, not a sanction lawfully available to the trial court in a civil contempt action.

¶35 Michael contends that because he is unemployed, he lacks the ability to purge his contempt and his failure to support his children is not willful. But his reasoning is circular. Substantial evidence supports the trial court's finding that Michael is voluntarily unemployed and thus has the ability to obtain employment to pay child support and purge his contempt.

¶36 We affirm the trial court's award of child support and finding of contempt, but we vacate the court's order on contempt and remand for further proceedings consistent with this opinion.

ARMSTRONG and PENOYAR, JJ., concur.

Review denied at 160 Wn.2d 1012 (2007).