[No. 41894-1-II.   Division Two.   September 5, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. CHENEY R. SALAZAR, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1 VAN DEREN, J. — Cheney Salazar appeals from his guilty plea to one count of forgery and the trial court's two orders imposing contempt sanctions. He argues that the trial court erred when it exercised its inherent contempt power to impose sanctions against him without first finding that statutory contempt procedures and remedies were inadequate, and that it abused its discretion when it denied his motion to appoint substitute counsel to represent him during a motion to withdraw his guilty plea based on the alleged ineffectiveness of trial counsel and when it denied his motion to withdraw his guilty plea. We hold that the trial court properly denied Salazar's motions to appoint substitute counsel and to withdraw his guilty plea. But we also hold that the trial court erred in imposing contempt sanctions under its inherent power[1] and remand with instructions to vacate the contempt orders and to credit Salazar with any time served for contempt.

## FACTS

¶2 On June 28, 2010, the State and Salazar entered into a written plea agreement concerning his forgery charge.

---

[1] Because we resolve the contempt issue on these grounds, we do not reach Salazar's claims that even assuming the trial court relied on statutory authority in imposing contempt sanctions, it failed to comply with statutory procedures.

The agreement provided that the prosecutor would recommend seven[2] months' confinement in exchange for Salazar's guilty plea on one count of forgery. The agreement further stated that the State's sentencing recommendation would increase if Salazar committed any new crimes, violated any conditions of release before sentencing, or failed to appear for sentencing. Salazar signed the plea agreement.

¶3 Salazar's written statement on plea of guilty provided that he understood that he could not change his mind about his plea if the discovery of new criminal history increased the standard range of his sentence and that the trial court had to impose a sentence within the standard range. The statement also provided that Salazar made his plea freely and voluntarily, that his lawyer had fully discussed and explained all of the plea's terms, and that Salazar understood them all. Both Salazar and defense counsel signed the plea documents, verifying these statements. Salazar stated in colloquy with the trial court that he went through the plea with defense counsel, that defense counsel read the plea to him, and that Salazar understood the plea and had no further questions.

¶4 Before sentencing, the trial court released Salazar from custody for chemical dependency evaluation and treatment. But when Salazar failed to report for treatment or to appear for sentencing, the trial court issued a bench warrant for his arrest. Before he was returned to Grays Harbor County on the bench warrant, Salazar was apprehended and convicted in Clallam County of attempting to elude a law enforcement officer. Because Salazar committed this new crime before sentencing on his Grays Harbor forgery conviction, it became part of his offender score, raising his offender score to six and increasing the standard sentence range to 12 months and one day to 14 months.

---

[2] The prosecutor redacted something originally written in this space, wrote the numeral "7," and initialed the change. Clerk's Papers at 30.

¶5 At the February 14, 2011, sentencing hearing on the Grays Harbor forgery conviction, defense counsel moved to withdraw from representing Salazar because Salazar intended to move to withdraw his guilty plea based on ineffective assistance of counsel. Salazar claimed that defense counsel failed to inform him that a new felony conviction would increase his offender score for sentencing purposes, and Salazar's understanding was that the prosecutor's original recommendation was four months' confinement, not seven. Defense counsel felt that he could not ethically represent Salazar in the motion to withdraw his guilty plea based on ineffective assistance.

¶6 The trial court stated, "I'm going to have to . . . ascertain why you believe that we have grounds for withdrawal, because I researched the law also, and he's not entitled to an attorney on a motion to withdraw[3] unless the Court finds there's merit to it." Report of Proceedings (RP) (Feb. 14, 2011) at 3. After ascertaining the grounds for Salazar's potential motion to withdraw his guilty plea, the trial court concluded that any such motion would be meritless and, thus, denied defense counsel's motion to withdraw.

¶7 After sentencing Salazar to 14 months' confinement, to run consecutive to his Clallam County conviction, the trial court observed objectionable behavior by Salazar and ordered his removal from the courtroom:

Let's understand something so we don't have a problem here. I just watched the little walk over here and the demeanor and

___

[3] CrR 4.2(f) governs withdrawal of guilty pleas before entry of the judgment and sentence. CrR 7.8 governs withdrawal of pleas after entry of the judgment and sentence. Defendants are entitled to counsel during sentencing because it is a critical stage of the proceedings. *State v. Robinson*, 153 Wn.2d 689, 694, 107 P.3d 90 (2005). Thus, Salazar was entitled to counsel at sentencing even though he moved to withdraw his plea before sentencing. If he had moved to withdraw his plea after entry of the judgment and sentence, he would not automatically have been entitled to counsel. *See In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 390, 972 P.2d 1250 (1999) (no right to counsel during postconviction proceedings); *Robinson*, 153 Wn.2d at 696 (trial court may appoint counsel if it initially determines CrR 7.8 motion has merit).

the rest of the gig going on. We don't do that in my courtroom. You're going to walk over there, be polite, shut up and do what you're told.

If not, you're going to pick up some dead time. You're going to go over to my jail for contempt, and it's not going to count on your time, and I'll bring you back when I feel like it.

Now, let's try it again.

Over. Right now. He's in contempt with his demeanor in the courtroom. Take hi[m] over. Bring him back, and he can be printed after I have him brought back to apologize. Get him out of here now. I'm not tolerating it. Dead time.

RP (Feb. 14, 2011) at 7-8.

¶8 During the afternoon of February 14, the trial court had Salazar returned to the courtroom. RP (Feb. 14, 2011) at 9. The trial court and Salazar discussed Salazar's previous behavior:

THE COURT: We'll make the record here so you understand where I'm coming from. Very bluntly, you want to screw around in this courtroom and act like a jerk, be disrespectful to the Court, go for it.

You did it twice this morning. Right now you're doing dead time, my man. And from that expression you just gave me, take him back, and when you can come in this courtroom and you can be polite and respectful, let me know.

[SALAZAR]: I don't understand what it is that I did. I just agreed, I mean.

THE COURT: Your mocking facial expressions and your manner you did with the other prisoners this morning is mocking the Court. And if you can't stand there and be polite and respectful, then you can do dead time, and I don't care how much of it you do. So go ahead.

Maybe I'll talk to him tomorrow. Apparently he didn't get the message a few minutes ago. Go sit down.

RP (Feb. 14, 2011) at 9-10.

¶9 Salazar returned from jail to the trial court the next day. The trial court stated:

Up here. Let's start off by we understand each other real well. I come into your house, I'm polite, I'm respectful. I don't make demonstrative facial and other personal examples of disrespect. And after I'm polite and I'm respectful, I leave your place, and you can assume that I respected you.

Now, when you come in my house, I expect the same thing, and that's not what I got yesterday. As far as I'm concerned, you can sit in that jail over there until you can apologize and be respectful, and it's all up to you.

RP (Feb. 15, 2011) at 11. Defense counsel addressed the trial court, referred it to chapter 7.21 RCW, and requested that the trial court impose a determinate sanction rather than an indeterminate, remedial sanction. The trial court refused, stating:

Well, it goes like this. *Despite any statute out there, let's go to square one. The inherent power of the Court is contempt. Period.* . . .

Now, it's real simple. Your client can either get sentenced and I can sign a document. So far he's conducted himself respectably. If he wants to apologize, you go off, you owed me one day, and he's done, and we're even. If he doesn't want to, he can go back over there and wait and sit more. It's up to him.

RP (Feb. 15, 2011) at 12 (emphasis added). Salazar responded, "I don't believe I conducted myself in an improper manner, sir." RP (Feb. 15, 2011) at 13.

¶10 The trial court then entered a contempt order, remanding Salazar to custody without credit for time served on "any matters" until he apologized. Clerk's Papers (CP) at 47. The contempt order did not state that the trial court relied on its statutory authority under chapter 7.21 RCW in imposing contempt sanctions.

¶11 On February 22, Salazar returned to the trial court. After a brief discussion regarding the location of Tunisia and Salazar's reiteration that he had not disrespected the trial court, the trial court entered another contempt order imposing an additional 30 days' confinement, consecutive

to his Clallam County sentence and ordering that Salazar should not be given credit for time served "against [his] current [department of corrections] sentence." CP at 48. Salazar appeals.

## ANALYSIS

### CONTEMPT SANCTIONS

¶12 Salazar argues that the trial court erred in relying on its inherent contempt powers in imposing sanctions without first finding that statutory contempt procedures and remedies were inadequate. He contends that this error requires remand with instructions to vacate the contempt orders and to credit him with time served. We agree.

██ ¶13 We review de novo a trial court's authority to impose sanctions for contempt. *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007) (plurality opinion). Trial courts may not exercise their inherent contempt power to impose "punitive or remedial sanctions for contempt of court, whether that contempt occurs in or outside of the courtroom," unless they "specifically find" all statutory contempt procedures and remedies are inadequate.[4]

---

[4] Although only four justices signed the plurality opinion in *A.K.*, Justice Madsen's concurrence, also signed by Justice Bridge, agreed on this point of law.

We respectfully disagree with our concurrence/dissent's contention that Justice Madsen's concurrence disagreed with this point of law. Concurrence/dissent at 495 n.7. As Justice Madsen stated in her concurrence's opening paragraph, she wrote to clarify that trial courts have no reason to and need not consider "the adequacy of criminal contempt sanctions" before exercising their inherent power to impose remedial sanctions, as remedial and criminal or punitive contempt sanctions "are aimed at different issues." *A.K.*, 162 Wn.2d at 653 (Madsen, J., concurring). But the remainder of the concurrence supports its agreement with the proposition that before exercising their inherent powers to impose contempt sanctions—whether remedial, punitive or criminal, or summary sanctions for direct contempt—courts must find inadequate the statutory procedures for the same *type* of contempt sanctions.

Our concurrence/dissent began its discussion of remedial contempt sanctions by observing the *statutory* remedy, "Under RCW 13.34.165(2), a dependency court may impose up to seven days as a remedial sanction when a party fails to comply with an order entered under that chapter." *A.K.*, 162 Wn.2d at 653 (Madsen, J., concurring). It further observed, "If a dependency judge concludes that seven days

*A.K.*, 162 Wn.2d at 652, 647. The remedy for the trial court's failure to make such a finding before exercising its inherent contempt power is vacation of the contempt orders entered as a result. *See A.K.*, 162 Wn.2d at 652-53.

■ ¶14 We agree with the *A.K.* lead opinion's and our concurrence/dissent's assertions that in imposing remedial sanctions for direct contempt, "summary adjudication is appropriate." *A.K.*, 162 Wn.2d at 646 n.4; concurrence/ dissent at 496. Indeed, RCW 7.21.050[5] authorized the trial

---

is an insufficient amount of time to coerce compliance, then the judge has the inherent power to impose a longer detention period." *A.K.*, 162 Wn.2d at 653 (Madsen, J., concurring). In concluding its discussion of remedial contempt sanctions, the concurrence quoted with approval the proposition that

> "[o]n the rare occasion when a juvenile court decides it must disregard the statutory seven-day limit and resort to its inherent contempt powers, the court must enter a finding as to why the statutory remedy is inadequate and articulate a reasonable basis for believing why some other specific period of detention will achieve what seven days will not."

*A.K.*, 162 Wn.2d at 653-54 (Madsen, J., concurring) (quoting *In re Interest of M.B.*, 101 Wn. App. 425, 453, 3 P.3d 780 (2000)).

Accordingly, the concurrence stated that "before a dependency court may exercise its inherent authority to hold a juvenile in contempt and impose a *punitive* sanction, it first must find that the statutory remedies for *criminal* contempt under RCW 7.21.040 are not adequate." *A.K.*, 162 Wn.2d at 653 (Madsen, J., concurring) (emphasis added). And it quoted with approval the proposition that before exercising their inherent powers to impose *remedial* sanctions, courts must find statutory *remedial* contempt procedures inadequate. It follows that the concurrence agreed with the lead opinion's general conclusion— courts may not exercise their inherent contempt power to impose "punitive or remedial sanctions for contempt of court, whether that contempt occurs in or outside of the courtroom," unless they "specifically find" all statutory contempt procedures and remedies are inadequate—to the extent that it was a *like as to like* statement. *A.K.*, 162 Wn.2d at 652. That is, courts may not exercise their inherent contempt power to impose "punitive or remedial sanctions for contempt of court, whether that contempt occurs in or outside the courtroom," unless they "specifically find" all statutory contempt procedures and remedies addressing *the same type of contempt and type of sanctions* are inadequate.

[5] RCW 7.21.050 provides:

(1) The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt. The judge shall impose the sanctions immediately after the contempt of court or at the end of the proceeding and only for the purpose of preserving order in the court and protecting the authority and dignity of the court. The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless

court to summarily impose remedial or punitive contempt sanctions for Salazar's contempt committed within the courtroom. But the trial court clearly exercised its inherent contempt powers "[d]espite any statute out there." RP (Feb. 15, 2011) at 12. Accordingly, it erred in exercising its inherent contempt powers before finding the applicable statutory procedures and remedies inadequate.[6]

¶15 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PENOYAR, J., concurs.

¶16 QUINN-BRINTNALL, J. (concurring in part, dissenting in part) — I agree with my colleagues that the trial court did not abuse its discretion in denying Cheney Salazar's motion to appoint substitute counsel and his motion to withdraw his guilty plea. However, when a defendant's courtroom behavior threatens the "authority and dignity of the court," the trial court has the inherent power to summarily impose coercive contempt sanctions necessary to restore order. RCW 7.21.050(1). Accordingly, I would overturn the puni-

compelling circumstances demand otherwise. The order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record.

(2) A court, after a finding of contempt of court in a proceeding under subsection (1) of this section may impose for each separate contempt of court a punitive sanction of a fine of not more than five hundred dollars or imprisonment for not more than thirty days, or both, or a remedial sanction set forth in RCW 7.21.030(2). A forfeiture imposed as a remedial sanction under this subsection may not exceed more than five hundred dollars for each day the contempt continues.

[6] Contrary to our concurrence/dissent's concern about imposing more exhaustive procedures prior to a trial court's removing a contemnor from courtroom proceedings, we do not envision an extensive or burdensome process. Concurrence/dissent at 497. The trial court must acknowledge the statutory constraints on its inherent contempt powers. We do not analyze or prescribe particular procedures because here the trial court articulated that it was exercising its contempt powers "[d]espite any statute out there." RP (Feb. 15, 2011) at 12.

tive 30-day contempt order but uphold the initial contempt sanctions—the 7 days that Salazar served while not exercising his option to purge the contempt by apologizing to the court.

¶17 The majority asserts that "[t]rial courts may not exercise their inherent contempt power to impose 'punitive or remedial sanctions for contempt of court, whether that contempt occurs in or outside the courtroom,' unless they 'specifically find' all statutory contempt procedures and remedies are inadequate." Majority at 492 (quoting *In re Dependency of A.K.*, 162 Wn.2d 632, 647, 174 P.3d 11 (2007).

¶18 This holding appears to rest on dicta[7] in the plurality opinion of *A.K.*, which, in my opinion, improperly conflates the summary contempt power (derived from the common law and the constitution) with statutory limitations imposed on the trial court's power to impose punitive sanctions *for types of contempt unrelated to* "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings." RCW 7.21.010(1)(a).

---

[7] The majority argues in a footnote that the above-quoted proposition has the force of precedent because Justice Madsen's concurrence concurs with this point of law. But a more thorough analysis of *A.K.* reveals that Justice Madsen's concurrence, in fact, disagrees *entirely* with much of this statement. In her opinion, Justice Madsen explains,

I agree with the majority that before a dependency court may exercise its inherent authority to hold a juvenile in contempt and impose a punitive sanction, it first must find that the statutory remedies for criminal contempt under RCW 7.21.040 are not adequate. *However*, to the extent that the majority may be read to require a dependency court to resort to criminal contempt before exercising its *inherent authority to impose a coercive contempt sanction, I disagree*.

162 Wn.2d at 653 (Madsen, J., concurring) (emphasis added). Justice Madsen argues that when imposing coercive contempt sanctions (often called remedial sanctions), a trial court need not find that other statutory remedies inadequately affect its purposes. But in the consolidated cases before the *A.K.* court, "the dependency courts imposed determinate, punitive sanctions without providing for a purge mechanism" and, in result, those courts "committed error by failing to provide due process protections, including initiation of charges by information, appointment of counsel, trial, and proof beyond a reasonable doubt." 162 Wn.2d at 654 (Madsen, J., concurring).

¶19 *A.K.* addressed whether a juvenile court had the inherent authority to issue punitive sanctions without first finding that other legislatively prescribed procedures and remedies were inadequate. *A.K.*, 162 Wn.2d at 647. Unlike the present case, *A.K.* dealt with punitive (often called "criminal") sanctions related to a juvenile's repeated *out-of-court actions*—not with a defendant's disruptive *in-court* behavior necessitating the summary imposition of remedial sanctions.

¶20 Disruptive in-court behavior undermines the court's authority and jeopardizes public safety. Since their inception, courts have been vested with "an inherent contempt authority, as a power 'necessary to the exercise of all others.' " *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) (citations omitted). This inherent contempt power is separate from statutorily granted contempt power. *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 327, 335, 553 P.2d 442 (1976). It is "created by the constitution, . . . comes into being upon the very creation of . . . a court and remains with it as long as the court exists." *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 423, 63 P.2d 397 (1936). The inherent contempt power "is lodged permanently with [the court], and the legislature may not, by its enactments, deprive the court of that power or curtail its exercise." *Blanchard*, 188 Wash. at 424. The legislature may only "regulate that power," and only "as long as it does not diminish it so as to render it ineffectual." *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 287, 534 P.2d 561 (1975) (citing *Carter v. Commonwealth*, 96 Va. 791, 32 S.E. 780 (1899)).

¶21 As the majority in *A.K.* notes, when imposing remedial sanctions for direct contempt, "summary adjudication is appropriate." 162 Wn.2d at 646 n.4. If a defendant attempts to disrupt court proceedings by showing off in front of other prisoners, he creates a volatile situation that must be diffused immediately. When a defendant such as

Salazar attempts to disrupt courtroom proceedings, a trial court has necessary, inherent authority to summarily impose remedial contempt sanctions and have the defendant removed from court (as occurred in the present case). Such remedial sanctions must, however, allow the contemnor the opportunity to "purge" the contempt—to "obtain his release [from sanction] by committing an affirmative act." *Bagwell*, 512 U.S. at 828. Here, for instance, Salazar needed only to apologize to the trial court for his disruptive in-court behavior to purge his contempt.

¶22 The majority envisions that more exhaustive procedures are necessary prior to a trial court's removing a contemnor from the courtroom proceedings. But the trial court has inherent authority to remove a defendant who repeatedly disrupts courtroom proceedings with threats, abusive language, and disrespectful posturing and gestures. Under the majority opinion, prior to having the disruptive contemnor removed, a judge would first be required to hold a hearing, analyze the statutory contempt provisions of ch. 7.21 RCW, and then enter findings that the legislatively conferred contempt powers are inadequate to address the barrage of disruptive behavior occurring in the courtroom. The common law, the constitution, common sense, and our precedents do not mandate this result.[8] Moreover, because *A.K.* addressed a contemnor's out-of-court conduct, I do not believe our Supreme Court intended *A.K.* to extend to situations involving courtroom security and order. Accordingly, I dissent on this issue. On remand, I would instruct the trial court to reverse only the 30-day punitive sanction it imposed without following necessary statutory and due process requirements.

---

[8] The Washington Supreme Court recently decided *State v. Gassman*, 175 Wn.2d 208, 283 P.3d 1113 (2012). Although fact specific and clearly factually disparate, the *Gassman* court endorsed the long-established notions that "[t]rial courts have the inherent authority to control and manage their calendars, proceedings, and parties" and that sanctions "may also be imposed under the court's inherent equitable powers to manage its own proceedings." 175 Wn.2d at 210-11.