FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9: 27

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIEL LANCE KULMAN, | No. 45722-9-II |
| Respondent, | |
| v. | |
| ANNE SETSUKO GIROUX, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Anne Giroux appeals a superior court commissioner's contempt order against Giroux for her refusal to comply with orders to obtain a mental health evaluation for herself and to enroll her children with a new therapist approved by the guardian ad litem (GAL). Giroux argues that the contempt sanction was punitive because she was unable to comply with the purge condition and because her one day of confinement was a determinate term of confinement that she could not shorten by compliance. Because the contempt sanction was not punitive, we affirm.

## FACTS

Anne Giroux and Daniel Kulman were divorced in 2006 and had two children together. Residential time for their two children was subject to a 2009 agreed parenting plan, which made Giroux the primary residential parent and gave Kulman only supervised visitation until he completed domestic violence treatment. The children were in talk therapy.

After one of the children became ill, the State initiated dependency proceedings and removed the children from Giroux's home, motivated in part by concerns about Giroux's mental health. The State later dismissed the dependency and returned the children to Giroux.

A. *Kulman's Motion To Modify the Parenting Plan and the Commissioner's Order Requiring Therapy*

In 2012, after Kulman had completed his domestic violence treatment, he moved to modify the parenting plan. On March 27, 2013, the commissioner entered an order requiring therapy and a mental health assessment (therapy order) that included two pertinent provisions. First, the therapy order required Giroux to enroll the children in therapy with Jamie Kautz for the purpose of eventually reunifying the children with Kulman.[1] Second, the therapy order required Giroux to obtain a mental health assessment:

> [Giroux] shall obtain a mental health assessment at Comprehensive Life Center or another center with a sliding scale. Full collateral information shall be provided by the GAL. . . . It is anticipated the assessment will be free and if not [Grioux] may bring motion for instructions.

Clerk's Papers (CP) at 11. Giroux moved to revise the therapy order. On May 2, 2013, the superior court entered a revision order that allowed the GAL to select a therapist for the children other than Kautz. The GAL subsequently provided the names of four therapists approved by Kulman's insurance for Giroux to choose from.

B. *Order Setting Deadline To Comply*

On May 31, 2013, the superior court heard both Giroux's motion to continue the date of the evidentiary hearing to modify the parenting plan and Kulman's motion to subpoena Giroux's

---

[1] It appears the commissioner and the GAL wanted to enroll the children with a new therapist because they wanted a neutral therapist for the reunification counseling.

medical records. On that date, the superior court addressed Giroux's failure to comply with the therapy order. Giroux argued that she did not enroll the children with one of the four GAL-approved therapists because she did not want to break the continuity of the children's therapy by enrolling them with a new therapist. Giroux argued she could not afford to obtain her own mental health assessment:

> [MS. GIROUX]: It's not a matter of, you know—how am I supposed to do what I can't financially do? I mean, let's be reasonable.
> [THE COURT]: There are resources within our community. I believe you can get one on a low-income basis. Comprehensive Mental Health was suggested. There is Community Health. There's Greater Lakes Mental Health. There's Good Samaritan Behavioral Health. There are resources within our community. You need to access them.
> [MS. GIROUX]: I have called. I wrote every single person's name down and phone number, and I don't have—I don't have the money.
> [THE COURT]: If it isn't done by 30 days from today, then we'll address why . . . .
> [MS. GIROUX]: Okay. I'll get all of my bank receipts and show you.

Verbatim Report of Proceedings (VRP) (May 31, 2013) at 23. The superior court entered an order giving Giroux 14 days to initiate therapy for the children with one of the GAL-approved therapists and 30 days to begin the process of obtaining a mental health examination, which could be with a provider with a sliding fee scale as long as the GAL had collateral input (deadline order).

C.    *Contempt Order and Review Hearing Order*

Kulman filed a contempt motion in July of 2013 because Giroux had neither enrolled the children with a GAL-approved therapist nor obtained a mental health assessment. Giroux again argued that she did not want to enroll the children with a GAL-approved therapist because it would break the continuity of her children's therapy.

The commissioner heard the motion on November 21, 2013. Giroux had neither enrolled the children with a GAL-approved therapist nor obtained a mental health assessment. The commissioner entered a contempt order against Giroux, which found Giroux had intentionally failed to comply with the March 27 therapy order and the May 31 deadline order. The contempt order also ruled that Giroux had the present ability to comply with these orders, but lacked the willingness to comply. The contempt order also stated the following:

> The [commissioner] sentences Anne Giroux to an indeterminate jail sentence. The sentence is suspended until 12/4/2013, if Anne Giroux does not purge contempt . . . then she shall report to the Pierce County Jail on 12/4/2013 . . . . Bail will be $500 cash.
>
> . . . .
>
> The contemnor may purge the contempt as follows:
>
> By scheduling her mental health assessment with collateral input from GAL and enrolling the children in [therapy] with [five named therapists]. This shall be accomplished by 12/4/2013.
>
> . . . .
>
> The court shall review this matter . . . on . . . 12/5/13 . . . . The jail shall transport Anne Giroux . . . if she is in custody at the time of the review.

CP at 279-80.

Giroux did not comply by December 4, 2013, but avoided confinement by paying $500 bail. At the December 5, 2013 review hearing, Giroux still had not complied. The commissioner entered an order at the review hearing that stated:

> Contempt has not been purged. Anne Giroux is still unwilling to comply with the court's order regarding re-unification [therapy].
>
> A review hearing is set for 12/10/2013 . . . . The court orders that if proof of an appointment for re-unification [therapy] for Daniel Kulman and the children using [one of five named therapists] is not provided [Kulman] will have custody of the children and the mother will be incarcerated on 12/10/2013.

No. 45722-9-II

CP at 273-74.

D.   *Confinement Order and Release Order*

At the December 10, 2013 review hearing, Giroux had not complied.  The commissioner entered a confinement order:

> Based upon a finding of civil contempt Anne Giroux shall be incarcerated in the Pierce County Jail on 12/10/2013 for one day.  There shall be a review hearing on 12/11/2013.
>
> The Pierce County jail shall transport Anne Giroux . . . if bail has not been paid.  Bail shall be set at $1,000.00 cash.

CP at 286.  This confinement order contained no purge clause.

At the December 11, 2013 review hearing, after Giroux had spent one day in confinement, Giroux still had not complied.  Giroux's attorney argued the confinement had become more punitive than coercive because jail would not convince Giroux to comply with the order to enroll her children with another therapist.  Kulman stated that he had contacted one of the five therapists in the order, and had scheduled potential therapy appointments for the children.  Kulman requested residential time with the children to take them to these appointments.

Instead, the commissioner called the GAL and scheduled an appointment between the GAL and the children.  The commissioner entered a release order that released Giroux from custody and scheduled another review hearing:

> Anne Giroux shall be released on condition that she comply with the court's order to allow GAL to interview the children on Monday.
>
> Anne Giroux shall appear at a review hearing on 12/20/2013 . . . . Anne Giroux shall initiate the previously ordered mental health assessment before the review date.

5

The GAL shall interview the children at [Giroux's] residence on 12/16/2013.

Anne Giroux shall take all reasonable actions necessary to implement the residential time of [Kulman].

CP at 289-91. The commissioner stated she would incarcerate Giroux again if she did not allow the children to be interviewed by the GAL on December 16. Giroux appeals *only* the November 21, 2013 contempt order, and does not appeal the December 10 confinement order.

## ANALYSIS

Giroux argues that the superior court erred by entering a punitive contempt order. We disagree.

We review findings of contempt and the appropriateness of contempt sanctions for abuse of discretion. *State v. Berty*, 136 Wn. App. 74, 83, 147 P.3d 1004 (2006). But we review whether a court's contempt sanction is punitive de novo as a question of law. *See In re Interest of Silva*, 166 Wn.2d 133, 140-41, 206 P.3d 1240 (2009); *State v. Salazar*, 170 Wn. App. 486, 492-93, 291 P.3d 255 (2012); *In re Interest of M.B.*, 101 Wn. App. 425, 454, 3 P.3d 780 (2000). Because Giroux argues that the contempt sanction is punitive, our review is de novo.

RCW 7.21.010(1)(b) defines "contempt of court" as intentional "[d]isobedience of any lawful judgment, decree, order, or process of the court." Washington statutes distinguish between criminal contempt sanctions that are punitive and civil contempt sanctions that are remedial. *State v. T.A.W.*, 144 Wn. App. 22, 24, 186 P.3d 1076 (2008); *see In re Marriage of Didier*, 134 Wn. App. 490, 500-02, 140 P.3d 607 (2006).

A remedial sanction is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to

perform." RCW 7.21.010(3). The remedial contempt power given a court is intended to operate to coerce a party to comply with an order or judgment. A remedial contempt sanction will stand if it served coercive, rather than punitive, purposes. *Didier*, 134 Wn. App. at 501-02.

Conversely, a punitive sanction is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). Before a punitive contempt sanction is imposed, a prosecutor must file a criminal complaint and the contemnor must receive "'those due process rights extended to other criminal defendants.'" *See* RCW 7.21.040(2)(a); *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 105, 52 P.3d 485 (2002) (quoting *In re Pers. Restraint of King, Dept. of Soc. and Health Serv's.*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988)). Because no criminal complaint or criminal due process existed here, the contempt sanction must be remedial to stand.

Whether a contempt sanction was remedial or punitive turns on "the substance of the proceeding and the character of the relief that the proceeding will afford." *King*, 110 Wn.2d at 799. In determining whether a particular sanction was remedial or punitive we do not look to the subjective intent of the court. *M.B.*, 101 Wn. App. at 439. Instead we look to the actual character of the relief. 101 Wn. App. at 439. "If the purpose of the sanction is to coerce compliance with a lawful court order, and a contemnor is jailed only so long as [she] fails to comply with such order, then the contempt is [remedial]." *King*, 110 Wn.2d at 799. But "[i]f the purpose of the contempt sanction is punitive and results in a determinate jail sentence, with no opportunity for the contemnor to purge himself of the contempt, it is [punitive]." 110 Wn.2d at 799. "As long as there is an opportunity to purge, the fact that the sentence is determinate does

not render the contempt punitive." *M.B.*, 101 Wn. App. at 439. But the opportunity to purge and obtain release must be present "*at all times.*" *Didier*, 134 Wn. App. at 504.

## I. INABILITY TO COMPLY WITH THE PURGE CONDITION

Giroux argues that the November 21, 2013 contempt order was punitive because Giroux was unable to comply with the purge condition. We disagree.

Confinement ceases to be coercive once the contemnor lacks the ability to comply with the order she is charged with violating. *King*, 110 Wn.2d at 804. Continuing a person's confinement for contempt for not performing an act she can no longer perform makes the sanctions purely punitive. 110 Wn.2d at 804. Inability to comply is an affirmative defense to remedial contempt, and a contemnor bears the burden of production and persuasion in presenting such a defense. 110 Wn.2d at 804. "The contemnor must offer evidence as to [her] inability to comply and the evidence must be of a kind the court finds credible." 110 Wn.2d at 804.

### A.    *Enrollment Requirement*

Giroux argues that she was unable to comply with the requirement to enroll her children with a GAL-approved therapist because she believed such enrollment would break the continuity of her children's therapy. We disagree.

Giroux has offered no evidence that she was unable to comply with the contempt order. Giroux's belief that compliance with the order was contrary to her children's best interest is evidence of Giroux's unwillingness to comply, not her inability to comply. Thus, Giroux failed to meet her burden of proving she was unable to comply with the requirement to enroll her children with a GAL-approved therapist.

### B.    *Mental Health Evaluation*

8

Giroux argues that she was unable to comply with the requirement to schedule a mental health evaluation because she could not afford it. We disagree.

Here, the therapy order stated that if the mental health evaluation was not free, Giroux could bring a motion for instructions. Both the therapy order and the deadline order stated that Giroux could obtain an assessment at a center with a sliding fee scale. The superior court provided a number of potential centers she could approach.

While Giroux asserted that she was unable to pay because she had no money, and that she had made calls to the centers, she did not sufficiently explain why a sliding scale would have prevented her from scheduling a mental health evaluation that was free. Moreover, she did not make a motion for instructions, as provided for in the order. Thus, Giroux failed to meet her burden of production and persuasion to prove that she was unable to comply with the requirement to schedule a mental health evaluation for herself due to her inability to pay.

C.    *Inability To Comply During Confinement*

Giroux argues that the December 10 confinement order that she did not appeal made the November 21 contempt order punitive because she was unable to schedule a mental health evaluation or enroll her children with a GAL-approved therapist *during* her one day of confinement. But the record contains no facts supporting that Giroux was unable to comply with the purge condition while in jail. Thus, Giroux failed to meet her burden of showing that she was unable to comply with the purge condition during her confinement.

II. ONE DAY OF DETERMINATE CONFINEMENT THAT COMPLIANCE COULD NOT SHORTEN

Giroux argues that the December 10, 2013 confinement order she did not appeal made the November 21, 2013 contempt order punitive by imposing a determinate one day of

9

confinement that Giroux could not shorten by complying with the contempt order's purge condition. We disagree.

Here, the November 21 contempt order imposed indeterminate confinement, but suspended that indeterminate confinement. The December 10 confinement order lifted the suspension on this indeterminate confinement for one day, pending another review hearing. The release order reinstated the suspension on the indeterminate confinement.

Assuming without deciding that the confinement order imposed a determinate sentence of one day, the record supports that this sanction was coercive rather than punitive. First, because the confinement order was merely lifting the suspended confinement from the contempt order, the contempt order's purge clause always applied. Thus, Giroux could have secured her release at any time, even during the one day of confinement, by complying with the purge condition. *Cf. Didier*, 134 Wn. App. at 503 (contempt order imposing 30 days of confinement was punitive because it imposed confinement and stated that if contemnor complied during the confinement period, commissioner "may entertain" a motion to modify the order). Second, looking to the character of the relief that the contempt proceeding would afford, Giroux had not complied with the order prior to the imposition of one day of confinement, and the superior court immediately followed the one day of confinement with another review hearing to determine whether Giroux had complied. This shows that the relief was designed to quickly coerce future compliance that had not yet occurred, rather than to punish past noncompliance.

Thus, looking at the substance of the contempt proceeding and the character of the relief that the contempt proceeding would afford, the sanction's purpose was to coerce compliance with a lawful court order, not to punish a past act by imposing a determinate jail sentence with

10

no opportunity for the contemnor to purge herself of the contempt. Therefore, we hold that the confinement order did not make the contempt order punitive.[2]

## ATTORNEY FEES

Kulman requests attorney fees on appeal under RCW 4.84.185 for defending a frivolous appeal, and under RCW 26.09.160(1)-(2) for prevailing in an appeal of a contempt order. We deny Kulman's requests.

RCW 4.84.185 allows attorney fees for having to defend frivolous appeals. *Fernando v. Nieswandt*, 87 Wn. App. 103, 112, 940 P.2d 1380 (1997). An appeal is frivolous if "'there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of any merit that there was no reasonable possibility of reversal.'" 87 Wn. App. at 111-12 (quoting *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987)). Here, whether a determinate jail sentence of one day is punitive or remedial is a debatable issue upon which reasonable minds could differ, and the appeal was not so totally devoid of any merit that there was not a reasonable possibility of reversal. Thus, the appeal is not frivolous, and Kulman is not entitled to fees under this provision.

RCW 26.09.160(1)-(2) allows attorney fees for filing a motion to initiate a contempt action to coerce compliance with an order "establishing residential provisions for a child." RCW 26.09.160(1)-(2) applies only to contempt orders initiated to coerce compliance with those

---

[2] Giroux argues that certain terms such as "sentenced," "bail," and "incarceration" in the contempt order shows the commissioner's punitive thinking, and therefore reveal that the contempt was punitive. Br. of Appellant at 14. But the commissioner's word choice does not control our analysis. This is particularly true because allowing the commissioner's punitive thinking to control the analysis would look to the commissioner's subjective intent, which we do not do. *See M.B.*, 101 Wn. App. at 439.

No. 45722-9-II

particular provisions of an order that established residential provisions for a child. *See In re Marriage of Rideout*, 150 Wn.2d 337, 358-59, 77 P.3d 1174 (2003).

Here, Giroux was held in contempt for failing to comply with provisions to enroll her children with a GAL-approved therapist and to schedule a mental health evaluation for herself. These provisions did not establish residential provisions for a child. Thus, we hold that Kulman is not entitled to attorney fees on appeal under RCW 26.09.160(1)-(2).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

12